**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

In re:

Square One Development, LLC                    Case Number: 6:17-bk-03846-KSJ
                                                              Chapter 11
                                                              Jointly Administered[1]

       Debtors,

_____/

**OBJECTION OF WEYAND FOOD DISTRIBUTIRS, INC.**
**TO EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL**
**AND REQUEST FOR EMERGENCY PRELIMINARY HEARINGAND**
**GRANTING ADEQUATE PROTECTION AND RELATED RELIEF**

COMES NOW, Weyand Food Distributors, Inc. ("Weyand"), by and through undersigned

counsel, and hereby files its Objection to the Emergency Motions for Authority to Use Cash

Collateral and Request for Emergency Preliminary Hearing and Granting Adequate Protection and

Related Relief filed by Debtor Square One Development, LLC and six (6) Affiliates,[2] Debtor

Square One Gainesville, LLC,[3] and Debtor Lakeland, LLC,[4] (the "Cash Collateral Motions"), and

---

[1] Jointly-administered cases: Square One Development, LLC, Case No.: 6:17-bk-03846-KSJ; Square One Winter Park, LLC, Case No.: 6:17-bk-03843-KSJ; Square One Tamiami, LLC, Case No.: 6:17-bk-03847-KSJ; Square One University, LLC, Case No.: 6:17-bk-03848-KSJ; Square One Ft. Myers, LLC, Case No.: 6:17-bk- 03849-KSJ; Square One Tampa Bay, LLC, Case No.: 6:17-bk-03850-KSJ; Square One Henderson, LLC, Case No.: 6:17-bk- 03851-KSJ; Square One Brandon, LLC, Case No.: 6:17-bk-03852-KSJ; Square One Tyrone, LLC, Case No.: 6:17- bk-03853-KSJ; Square One The Villages, LLC, Case No.: 6:17-bk-03855-KSJ; Square One Gainesville, LLC, Case No.: 6:17-bk-03856-KSJ; Square One Burgers Prop Co., LLC, Case No.: 6:17-bk- 03857-KSJ; and Square One Lakeland, LLC, Case No.: 6:17-bk-03858-KSJ

[2] A single Cash Collateral Motion was filed for Debtors Square One Development, LLC, Debtors Square One University, LLC, Square One Ft. Myers, LLC, Square One Henderson, LLC, Square One Brandon, LLC, Square One Tyrone, LLC, and Square One The Villages, LLC [Doc. 3 in Jointly Administered Case No. 6:17-bk-03846-KSJ].

[3] *See* Doc. 6 in *In re Square One Gainesville, LLC*, Case No.: 6:17-bk-03856-KSJ.

[4] *See* Doc. 6 in *In re Square One Lakeland, LLC*, Case No.: 6:17-bk-03858-KSJ.

further objects to the use of assets impressed by the trust provision of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c)(2), by all Debtors without payment to or adequate protection for Weyand.  In support of its Objection, Weyand states as follows:

## I.   BACKGROUND

1.      On June 9, 2017, Debtor Square One Development, LLC and 12 of its subsidiaries (the "Affiliated Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code in this Bankruptcy Court (the Affiliated Debtors and Square One Development, LLC are hereinafter collectively referred to as the "Debtors").

2.      Debtors are continuing in possession of their business and property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.      On June 9, 2017, all Debtors, with the exception of Square One Winter Park, LLC, Square One Tamiami, LLC, Square One Tampa Bay, LLC, and Square One Burgers Prop Co LLC filed Cash Collateral Motions seeking authority to use their "cash on hand and funds to be received into their operating accounts during normal operations" (the "Cash Collateral") for ongoing operations, and to grant a replacement lien in favor of their purported secured lenders, First Citrus Bank and/or Stearns Bank (the "Secured Lenders").  *See* Cash Collateral Motions.

4.      On June 19, 2017, the Court granted the Cash Collateral Motions on an interim basis (the "Interim Orders").  The Interim Order provided, in part, that Debtors are permitted to use Cash Collateral for continued operations pursuant to a budget, and for a replacement lien in favor of Secured Lenders.

5.      Prior to the Petition Date, Weyand supplied Debtors with perishable agricultural commodities ("produce") having an aggregate principal value of $25,282.17, all of which, plus accrued interest and attorneys' fees, remains unpaid and is past due.  *See* Declaration of Sherry Hart ("Hart Dec."), Exhibit A hereto.

6.      Weyand is a PACA licensee which preserved its rights as a beneficiary of the statutory trust created under the Perishable Agricultural Commodities Act of 1930, as amended 7 U.S.C. §499e(c) ("PACA"), by placing the language on its invoices to Debtors as permitted by 7 U.S.C. §499e(c)(4). *See* Hart Dec., Exhibit A hereto.

## II.      SUMMARY OF OBJECTIONS

7.      Weyand objects to the relief requested in Debtors' Cash Collateral Motions and granted in the Interim Orders on the grounds that such relief violates the trust provisions of PACA and is prejudicial to its rights under the PACA trust.

8.      Neither the Cash Collateral Motions nor the Interim Orders address Weyand's rights to prompt payment as a beneficiary of the PACA trust; nor is adequate protection given to Weyand for the diminution of its PACA trust assets while Debtors' cash, which is presumed to be a PACA trust asset, is being used to fund ongoing operations.  Essentially, Debtors are using PACA trust assets to continue operations, and otherwise provide adequate protection to the alleged Secured Lenders, but will not guarantee that there will be sufficient PACA trust funds available to pay Weyand.  The PACA trust interests of Weyand must be preserved and protected by segregation and immediate payment of assets equal to the total amount of the prepetition PACA trust claim owed by Debtors to Weyand.

## III.      ARGUMENT

## A.  Debtors are Operating Subject to PACA.

9.     Debtors are operating as dealers under PACA.  A "dealer" under PACA is defined as "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce."   7 U.S.C. §499a(b)(6).  "Wholesale or jobbing quantities" is defined as "aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R. § 46.2(x).  Retailers must also purchase over $230,000 of produce in a calendar year.[5] *See* 7 U.S.C. §499a(b)(6); *Royal Food Co. v. RJR Holdings, Inc., d/b/a/ T.G.I. Friday's*, 252 F.3d 1102 (9th Cir. 2001) (plain language and purpose of PACA require the inclusion as "dealers" under PACA of restaurants which purchase wholesale quantities of produce); *In re Old Fashioned Enterprises, Inc.*, 236 F.3d 422 (8th Cir 2001) (the plain language of the definition of "dealer," and the language and design of the PACA statute as whole, demonstrate that Congress intended to include restaurants within the term "dealer" that purchase wholesale quantities of produce); *In re Magic Restaurants, Inc.*, 205 F.3d 108 (3d Cir. 2000), *cert. denied*, 531 U.S. 818 (2000) (definition of "dealer" is unambiguous and includes entities which purchase wholesale quantities of produce without regard to whether they are "primarily" engaged in the business of buying or selling produce); *In re Country Harvest Buffet Restaurants, Inc.*, 245 B.R. 650 (9th Cir.  BAP 2000) (pursuant to plain language of PACA, a restaurant which purchases wholesale quantities of produce is subject to PACA as a dealer even though the restaurant is not primarily engaged in the business of buying or selling perishable commodities); *JC Produce v. Paragon Steakhouse Restaurants, Inc.*, 70 F. Supp. 2d 1119 (E.D. Cal. 1999) (unambiguous definition of "dealer" not limited to entities which re-sell produce in

---

[5] Weyand does not necessarily agree that Debtors, as restaurants, are "retailers" under PACA, but this point is moot because Debtors purchased well over $230,000.00 of produce in a calendar year.

unaltered form and includes entities which purchase wholesale quantities of produce); *Red's Market v. Cape Canaveral Cruise Line, Inc.*, 181 F. Supp. 2d 1339 (M.D. Fla. 2002), *aff'd* 2002 WL 2001204 (11th Cir. 2002) (holding that "the PACA trust plainly applies to the products purchased by defendants both before and after they converted the perishable commodities into meals"). In this case, Weyand has demonstrated that Debtors purchased over 2,000 pounds of produce on February 24, 2017. Hart Dec. ¶ 8. In addition, Debtors purchased $305,915.97 of produce in 2016. *Id.* ¶ 9. Therefore, Debtors meet the statutory definition of a "dealer" and are operating subject to PACA. 7 U.S.C. §499a(b)(6).

10. For this analysis, it does not matter that Debtors are separately incorporated. Allowing each of the Debtors' restaurant locations to be treated separately and without regard to their common ownership and control and commingling of assets would circumvent the protections under PACA and does not reflect the reality of their operations. PACA is a remedial statute and "should be given a liberal construction to effectuate its statutory purpose." *Hull Company v. Hauser Foods, Inc.*, 924 F.3d 777, 781 (8th Cir. 1991). And, Courts should not give effect to the corporate form where it is used to work a fraud or injustice or to defeat legislative policies. *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 629-30 (1983). In order to avoid PACA liability, a creative produce buyer need only create separate corporate entities, and make sure that none of them fall within the statutory definition of a dealer. This manipulation of the corporate form would result in defeat of the legislative protections provided to produce suppliers, and must not be countenanced. *First National City Bank*, 462 U.S. at 629-30; *Mattes v. USDA*, 721 F.2d 1125, 1131-32 (7th Cir. 1983). This issue was addressed in a PACA case before the U.S. District Court for the District of Colorado regarding a PACA creditor's entitlement to injunctive relief against the parent company of grocery stores which failed to pay

for produce.  *See Freshpack Produce, Inc. v. VM Wellington LLC*, 2013 U.S. Dist. LEXIS 918 (D. Colo. Jan. 3, 2013)[6] (holding that the parent company is a "buyer" when it paid for purchases delivered to its grocery store locations for purposes of determining that it was subject to PACA as a dealer).

11.     Here, Square One owns 100% of the Affiliated Debtors, which operate restaurants in west central Florida, with a common corporate office at 704 Wet Bay Street, Tampa, Florida, 33606.  Chapter 11 Case Management Summary ¶¶ 2 & 7 [Doc. 6].  Square One's Managing Members are four (4) individuals who own 78% of Square One.  *Id. ¶* 7.  The remaining equity interests in Square One are classes reserved for additional equity investors. *Id.*

12.     Debtors' bank accounts are all maintained at First Citrus Bank. *Id.* ¶ 10. Each day, the funds in the accounts of the Affiliated Debtors are swept to a master account in the name of Square One (the "Master Account"). *Id.* The Master Account is the "concentrated collection point for all cash received by Debtors." *Id.* Square One retains a portion of these funds for insurance expenses under group insurance policies, administrative expenses, and payroll for each restaurant location's manager.  *Id.*  Accordingly, Debtors are controlled by the same individuals, share the same corporate address, share the same lender, depository bank, and have commingled their assets. The commonalities between these Debtors demonstrates that their produce purchases should be aggregated, and they should be considered one "dealer" for purposes of PACA.  Accordingly, Debtors' corporate forms should not be used to circumvent the PACA trust protections.

---

[6] That holding was appealed to the 10th Circuit Court of Appeals, and the preliminary injunction order was stayed pending appeal. *Freshpack Produce v. VM Wellington, et al.*, Appeal No. 13-1011.  The case was eventually settled.

**B.  PACA Creates a Statutory Trust for the Benefit of Sellers of Produce.**

13.     The PACA was enacted in 1930 to encourage fair trading in the marketing of produce and to prevent unfair and fraudulent practices in an industry peculiarly susceptible to such practices.  See, H. Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 U.S. Code Cong & Admin News 405, 406.  To achieve this purpose, the amendment established a statutory trust under which a receiver of produce holds as a fiduciary its produce-related assets, such as the produce itself or other products derived therefrom, as well as any receivables of proceeds from the sale thereof, and any assets purchased or co-mingled with such proceeds until full payment is made to the seller.  7 U.S.C. § 499e(c)(2); *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154 (11th Cir. 1990); *In re Kornblum & Co., Inc.*, 81 F.3d 280 (2d Cir. 1996); *Sanzone-Palmisano Co. v. M. Seaman Enterprises, Inc.,* 986 F.2d 1010, 1013 (6th Cir. 1993).  Under the PACA, suppliers of produce who properly preserve their trust rights become beneficiaries of a floating, non-segregated statutory trust that arises on delivery of the buyer's first produce order and continues until the suppliers are paid in full.  *In re Atlantic Tropical Mkt. Corp.,* 118 B.R. 139, 141 (Bankr. S.D. Fla. 1990)*; see also Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632 (11th Cir. 2004); *In re Kornblum & Co., Inc.*, 81 F.3d 280; *Sanzone-Palmisano Co.,* 986 F.2d at 1013; 7 C.F.R. § 46.46. Here, Weyand supplied Debtors, pre-petition, with wholesale quantities of produce worth the amount of $25,282.17.  Hart Dec. ¶ 10. Weyand, a PACA licensee, preserved its trust rights by delivering to Debtors invoices including the provisions of 7 U.S.C. § 499e(c)(4).  *Id.* ¶¶ 10-12. This sum remains outstanding despite Debtors' receipt and acceptance of the produce, and their use and benefit of these produce items.

14.     Debtors are required by PACA, a federal statute co-equal with the Bankruptcy Code, to pay promptly for produce and to maintain sufficient assets in trust until full payment is

made to all of their PACA trust beneficiaries, even in the event of the filing of bankruptcy. *Frio Ice*, 918 F.2d at 156; 49 Fed. Reg. at 45738; 7 U.S.C. § 499b(4).  The rights of PACA trust beneficiaries to assets impressed with the PACA trust are superior to the rights of debtors and their secured creditors.  7 U.S.C. § 499e(c)(1); *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997); *C.H. Robinson Co. v. Trust Co. Bank, N.A.*, 952 F.2d 1311, 1316 (11th Cir. 1992); *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir. 2003); *Nickey Gregory Co., LLC v. Agricap, LLC,* 597 F.3d 591, 594 (4th Cir. 2010)*; A&J Produce Corp. v. Bronx Overall Economic Development Corp.*, 542 F.3d 54 (2d Cir. 2008); *Consumers Produce Co. v. Volante Wholesale Produce*, 16 F.3d 1374, 1379 (3d Cir. 1994); *In re W.L. Bradley Company, Inc.*, 75 B.R. 505, 514 (Bankr. E.D. Penn. 1987).

15.     Congress also specifically directed that the failure to maintain the trust and make full payment promptly to the trust beneficiary is unlawful.  7 U.S.C. § 499b(4).  Agricultural merchants, dealers and brokers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities[,]" and any act or omission inconsistent with this responsibility, including dissipation of trust assets, is proscribed.  7 C.F.R. § 46.46(e)(1).  Dissipation of trust assets is defined as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid [sellers] to recover money owed in connection with produce transactions." 7 C.F.R. § 46.46(a)(2).

16.     Subsection 2 of §499e(c), defines the corpus of the trust as all produce including all <u>inventories of food or other products</u> derived from produce, and all receivables or <u>proceeds from the sale of produce or its products</u>.  7 U.S.C. §499e(c)(2) (emphases added).  The trust also extends to all inventory of produce a buyer obtained with a commingled account, and to any other

assets acquired or maintained with PACA trust funds. *In re Atlantic Tropical Market Corp.*, 118

B.R. 139 at 141; *Sanzone-Palmisano Company*, 986 F.2d at 1012-13; *In re Kornblum*, 81 F.3d at

286. All assets of a produce buyer are presumed to be impressed with the PACA trust. *In re*

*Atlantic Tropical Market Corp.*, 118 B.R. 139 at 141; *Sanzone-Palmisano Company*, 986 F.2d

1012-13.

17.     PACA trust assets are not considered part of the bankruptcy estate. *In re Kornblum*

*& Co., Inc.*, 81 F.3d at 284; 11 U.S.C. § 541(d). The PACA trust provision provides that unpaid

produce sellers "are placed first in line among creditors for all produce-related assets if the produce

dealer declares bankruptcy." *Frio Ice,* 918 F.2d at 156. "It is clear from the terms of the PACA

amendments and from the supporting legislative history that Congress intended to create a *priority*

status for unpaid produce claimants, priming even the administrative claims which normally stand

first in line in a bankruptcy distribution." *In re Fresh Approach, Inc.*, 51 B.R. 412, 420 (Bankr.

N.D. Tex. 1985) (emphasis in original). "Allowing a defunct PACA trustee to pay other creditors

with PACA funds before the seller is paid in full would frustrate [the purpose of PACA], and

would be contrary to the language of PACA and its accompanying regulations." *C.H. Robinson*

*Company v. Alanco Corp.*, 239 F.3d 483, 488 (2nd Cir. 2001).     Thus, there is no question that

PACA trust assets are not property of the Debtors' estate and must be set aside for distribution to

trust beneficiaries. *In re Long John Silver's Restaurants, Inc.*, 230 B.R. 29, 32 (Bankr. D. Del.

1999); *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Bankr. C.D. Ill. 1997); *Morris Okun, Inc. v.*

*Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993); *In re Southland & Keystone*, 132

B.R. 632 (9th Cir. BAP 1991); *In re Asinelli, Inc.*, 93 B.R. 433 (M.D.N.C. 1988); *In re Carolina*

*Produce Distributors, Inc.*, 110 B.R. 207 (W.D.N.C. 1990); *In re Fresh Approach, Inc.*, 48 B.R.

926 (Bankr. 1985); *In re Milton Poulos, Inc.*, 94 B.R. 648 (Bankr. C.D.Cal. 1988); see also 11

U.S.C. § 541(d) (property in which debtor holds legal title, but not an equitable interest, does not become part of the estate).

18.    Furthermore, PACA beneficiaries are entitled to immediate turnover of their trust funds upon the commencement of a bankruptcy.  *In re Fresh Approach*, 51 B.R. 412 (Bankr. N.D.Tex. 1985); *In re Kelly Food Products, Inc.*, 204 B.R. 18; *In re W.L. Bradley Co., Inc.*, 75 B.R. 505 (Bankr. E.D.Pa 1987).  Unpaid produce suppliers are entitled to immediate relief, either by the segregation of trust assets, *Frio Ice, S.A.* 918 F.2d at 156; *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987); *In re Richmond Produce Co., Inc.*, 112 B.R. 364 (N.D.Cal. 1990); *J.R. Brooks & Son v. Norman's Country Market*, 98 B.R. 47, 50 (N.D.Fla. 1989), or by immediate payment.  *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Debtors required to immediately pay trust assets to the PACA trust creditors).  Accordingly, as PACA trust beneficiary, Weyand is lawfully entitled to immediate turnover of its PACA trust assets.  *In re Kelly Food Products, Inc.*, 204 B.R. 18; *In re W.L. Bradley Co., Inc.*, 75 B.R. 505; and *In re Fresh Approach, Inc.*, 51 B.R. 412.

### C.  The Relief Requested in the Cash Collateral Motions Violates PACA.

19.    Under PACA, a receiver of produce must hold its produce-derived assets in trust as a fiduciary until full payment is made to the seller.  7 U.S.C. § 499e(c)(2); *Frio Ice*, 918 F.2d at 155.  The relief requested by Debtors and granted in the Interim Order allows Debtors to use cash impressed with the PACA trust to continue operations, and provides adequate protection to Debtors' purported Secured Lenders in the form of a replacement lien, but provides no relief to Weyand.  Such relief is improper because Weyand is entitled to prompt turnover of its PACA trust funds and Weyand's interest as a PACA trust creditor primes the interests of Debtors' purported

Secured Lenders.  7 U.S.C. § 499e(c)(1).  Debtors' cash proceeds are subject to the PACA trust. Debtors' use of cash collateral to continue operations and make various payments without segregating sufficient funds to pay Weyand's PACA trust claim is in contravention of PACA.

20.      In addition, it is improper to grant a lien to Debtors' purported secured creditor which would prime the interests of Weyand.  Such relief is contrary to PACA because all of Debtors' assets are impressed with the PACA trust, absent evidence to the contrary.  *See In re Kornblum & Co.*, 81 F.3d at 287.  The party challenging the trust has the burden of proving either: (1) no PACA trust existed when the disputed assets were acquired; (2) even though a PACA trust existed at that time, the assets were not acquired with trust assets; or (3) although a PACA trust existed when the assets were acquired, and the assets were acquired with trust assets, all unpaid sellers of produce were paid in full prior to the transactions involving the unpaid PACA trust creditors herein.  *Id.*  The purpose of PACA is to ensure trust creditors are paid ahead of lenders, and Debtors improperly propose to give their purported Secured Lenders a priority lien and adequate assurance using PACA trust assets.  7 U.S.C. § 499e(c)(1).  Such relief is contrary to the express purpose of PACA's trust provision.  *Id.*

21.      Further, while the Cash Collateral Motions and Interim Orders address how Debtors' alleged Secured Lenders will be protected, Debtors fail to provide adequate protection for Weyand.  The Cash Collateral Motions and Interim Orders do not state how or when Weyand's PACA trust claim will be paid.

22.      In essence, Debtors are requesting that they be permitted to keep dissipating trust assets through their continued operations, grant a lien to their purported Secured Lenders, with no provision made for payment of Weyand's pre-petition PACA trust debt.  This is precisely the kind of risk that Congress decreed produce suppliers would not have to assume by enacting the trust

provision of PACA.  It is contrary to federal law to reorganize using PACA trust assets.  Such trust assets must be segregated and "freely available" to satisfy sellers of produce.

### IV.    RELIEF REQUESTED

23.    Debtors must be required to demonstrate how they will adequately protect the interests of their PACA trust creditors.  *See* 11 U.S.C. §363(o).  Weyand requests that Debtors be required to set aside sufficient monies to pay Weyand's PACA trust claim, and to promptly pay over those trust assets to Weyand.[7] The propriety of this remedy is demonstrated by the Order issued by the United States Bankruptcy Court for the District of Delaware in the case of *In re Fleming Companies, Inc., et al*, Case No. 03-10945 (MFW), wherein the Court granted the same relief that PACA Creditors are seeking herein, and required the Debtors to set aside $26 million for the benefit of the Debtors' PACA Creditors which were granted a replacement lien in the final financing order.  Similarly, the United States Bankruptcy Court for the Southern District of New York granted the same relief and required the Debtors to set aside $30 million for the benefit of the Debtors' PACA Creditors in the case of *In re Winn Dixie Stores, Inc., et al.*, Case No. 05-11063-RDD (subsequently transferred to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division).  The adequate protection requested in this case is considerably less, but just as vital to protect the rights of Weyand under the PACA trust.

24.    Anything less than an actual segregation and timely payment of PACA trust assets contravenes the statutory and case law on this issue, and frustrates Congress' intent that PACA beneficiaries and their trust rights remain free from the burdens and delays inherent in bankruptcy.

---

[7] PACA claimants are entitled to payment of the full amount due under the PACA trust, which is the principal amount its PACA claim, plus interest and attorneys' fees as "sums owing in connection" with the PACA trust debt. *See Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 633 (11th Cir. 2004).

Failure to do so will likely lead to Weyand being left with no PACA trust assets, no means of securing payment and no other adequate remedy.

## V.    CONCLUSION

25.    For the foregoing reasons, Weyand respectfully requests that the Debtors be required to segregate sufficient funds to pay Weyand's PACA trust claim, and be directed to promptly pay this prepetition PACA trust debt.

Dated this 12th day of July, 2017.

Respectfully submitted,

**WATKINS LAW FIRM, P.A.**

/s/Allan C. Watkins

**ALLAN C. WATKINS, ESQUIRE**
Florida Bar Number: 185104
707 North Franklin Street, Suite 750
Tampa, Florida 33602
Tel: (813) 226-2215
Email: allan@watkinslawfl.com
Attorney for Weyand Food Distributors, Inc,
Creditor

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing and Declaration in Support was forwarded to all parties via electronic notice listed on the CM/ECF matrix on July 12, 2017.

/s/Allan C. Watkins

**ALLAN C. WATKINS, ESQUIRE**